UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANN WASMANSKI, and        :
WILLIAM WOJENSKI,         :      HONORABLE JOSEPH E. IRENAS
                          :
            Plaintiffs,   :
                          :      CIVIL ACTION NO. 07-6001 (JEI)
      v.                  :
                          :
T.G.I. FRIDAY'S INC.,     :            **OPINION**
                          :
            Defendant.    :


**APPEARANCES:**

McDOWELL RIGA, P.C.
By:  Ellen M. McDowell, Esq.
46 W. Main Street
Maple Shade, New Jersey 08052
         Counsel for Plaintiffs

CONNELL FOLEY LLP
By:  Matthew S. Schultz, Esq.
85 Livingston Avenue
Roseland, New Jersey 07068
         Counsel for Defendant


**IRENAS**, Senior District Judge:

Plaintiffs have brought this suit against Defendant T.G.I.
Friday's ("Defendant" or "the Restaurant"), alleging that while
dining at the Restaurant, Plaintiff Wasmanski discovered a mouse
carcass in her mashed potatoes.[1]  The Complaint asserts claims

---

[1]   Subject matter jurisdiction is based on diversity of citizenship.
*See* 28 U.S.C. § 1332(a) and (c).  This case was originally filed in New Jersey
state court and removed to this Court by Defendant T.G.I. Friday's and its
parent corporation, Carlson Restaurants Worldwide, Inc., which was originally
named as a defendant to this action, but has since been voluntarily dismissed
from this suit.  The Notice of Removal indicates that T.G.I. Friday's state of
incorporation is New York and its principal place of business is located in
Texas.  Plaintiffs are citizens of New Jersey.

for (1) negligence; (2) intentional infliction of emotional distress (hereafter "IIED"); (3) negligent hiring; and (4) punitive damages.[2]

Defendant moves for summary judgment on Plaintiffs' claims for intentional and negligent infliction of emotional distress, and moves for sanctions, asserting that Plaintiffs' claims are frivolous and without evidentiary support.  Specifically, Defendant argues that Plaintiffs' evidence as to the emotional distress Plaintiffs suffered after discovering the mouse carcass is insufficient as a matter of law because Plaintiffs admitted that they have never sought treatment for their injuries.  For the reasons discussed below, Defendant's Motion will be denied in its entirety.

## I.

Plaintiffs Wasmanski and Wojenski, along with their children,[3] ate a meal at the Restaurant on November 11, 2005. Allegedly, Wasmanski was served mashed potatoes containing "some foreign matter . . . which appeared to be paper of some sort." (Compl. ¶ 11)  Wasmanski allegedly asked her server for a

---

[2]  The Complaint also asserts a negligence claim against "John Doe Corporations 16-30 and/or their agents and employees."

[3]  Each Plaintiff has children from previous marriages.  Plaintiffs presently live in the same house and have had two children together, but are not married.  It appears from the limited record before the Court that Plaintiffs were neighbors, and perhaps romantically involved, at the time of the incidents giving rise to this suit.

"replacement dish of mashed potatoes."  (Id. ¶ 12)  Upon
receiving the replacement dish, Wasmanski allegedly discovered "a
complete carcass readily identifiable as a mouse" when she placed
her fork into the mashed potatoes.  (Id. ¶ 15)

Defendant disputes the above-recited facts, but argues that
even assuming these facts as true, Plaintiffs' undisputed
evidence of the emotional distress they suffered as a result of
the incident is insufficient as a matter of law.  Defendant
further argues that Plaintiffs claims are so lacking in
evidentiary support in this regard that Rule 11 sanctions are
warranted.

First, it is undisputed that neither Plaintiff sought
medical treatment for their injuries.  Plaintiffs' answers to
interrogatories indicate that both have suffered only
psychological injuries, not physical injuries,[4] and that neither
have sought professional treatment, therapy or counseling for
those psychological injuries. (Def's Ex. D)  The answers to
interrogatories further state:

> [Plaintiff Wasmanski]: I am afraid there is some-
> thing in the food and it is not safe.  My social
> life has been changed because I do not enjoy going
> out to eat with my family or with friends.  I have
> difficulty eating in my relatives or friend's home.

> [Plaintiff Wojenski]: I do not enjoy eating out.  I
> stopped eating lunch because I have to eat on the

---

[4]  The Court notes however, that Wasmanski testified at her deposition
that she "get[s] nauseated" when she is in situations where she is expected to
eat outside of her own home.  (Wasmanski Dep. p. 98)

>road.  I am nervous to eat on the road because I am
>afraid there will be something wrong with the food.
>My social life has changed in that I do not like to
>go out to eat with family or friends.  I have a hard
>time eating at a friend's home or relative's home.

(Def's Ex. D)

Plaintiff Wasmanski's undisputed testimony as to her

psychological injuries is as follows:

>I am very scieved out by the thought of eating foods
>that other people prepared because I'm-- I have an
>inability to be trustworthy of other people's
>cooking habits at this point and their cleanliness
>ability.

(Wasmanski Dep. p. 96)  She further testified that after the

incident she stopped eating lunch with her co-workers because

they ate lunch at restaurants.  (Id. p. 96-97)  Lastly, she

testified that she routinely eats at home before or after

attending a social event where food is served so that she can

avoid eating the food. (Id. p. 97-98)

Plaintiff Wojenski's testimony about his psychological

injuries is that he can "no longer eat in a public establishment.

. . . I just don't trust anybody's food."  (Wojenski Dep. p. 37)

## II.

"[S]ummary judgment is proper 'if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Federal Rule of Civil Procedure 11 provides, in relevant part:

Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions

(a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record . . .

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

   (3) the allegations and other factual
contentions have evidentiary support or, if
specifically so identified, are likely to have
evidentiary support after a reasonable opportunity
for further investigation or discovery; and

   (4) the denials of factual contentions are
warranted on the evidence or, if specifically so
identified, are reasonably based on a lack of
information or belief.


(c) Sanctions. If, after notice and a reasonable
opportunity to respond, the court determines that
subdivision (b) has been violated, the court may . .
. impose an appropriate sanction upon the attorneys,
law firms, or parties that have violated subdivision
(b) or are responsible for the violation.


### III.

  The Court will first address Defendant's Motion for Summary

Judgment and then turn to the Motion for Sanctions.


### A.

  Before turning to the merits of Plaintiffs' IIED claims, two

initial points require discussion.  First, Defendant's Motion

asks this Court to dismiss Plaintiffs' claim for *negligent*

infliction of emotional distress, however, no such cause of

action is pled in the Complaint, and Plaintiffs' deposition

testimony removes all doubt that their emotional distress claims

are based on intentional conduct.

  The Complaint does plead negligence-- namely, negligence in

failing to "refrain from serving a dead mouse to its business

patrons" (Compl. p. 3, ¶ 17), and negligent hiring / supervision of employees (Compl. p. 4)-- but not negligent infliction of emotional distress.  Moreover, both Plaintiffs testified unequivocally that they believe the mouse was intentionally placed in Plaintiff Wasmanski's potatoes:

> Q: . . . you've suggested that it is your opinion that someone did it intentionally; correct?
>
> [Wasmanski]: I will definitely say yes . . .
>
> Q: Tell me what your opinion is based on.
>
> [Wasmanski]: My opinion is based on the way that the mouse was laid, it almost seemed gently and intentionally upon the potatoes and covered gently like a blanket with the cheese. . . . It seemed very specifically laid there.
>
> (Wasmanski Dep. p. 54-55)
>
> Q: Can you tell me the facts you have from a firsthand perspective about someone intentionally placing some item in Ann's food on November 11, 2005?
>
> [Wojenski]: Well, the dead mouse was placed dead center on top of the mashed potatoes, not mixed in, placed on top of the mashed potatoes and then covered with cheese. . . . It was dried out but it was not mashed up into the potatoes, because it was too intact.  That's why I believe it was intentionally placed in there.  If it had gone through the mixer, no way.
>
> (Wojenski Dep. p. 40, 50)

Thus, Plaintiffs do not plead a cause of action for negligent infliction of emotional distress, and Defendant's Motion as to

that non-existent claim will be dismissed as moot.[5]

Second, Plaintiff Wojenski's IIED claim must be kept analytically separate from Plaintiff Wasmanski's claim.  While both Plaintiffs allegedly viewed the mouse carcass at the table, the potatoes were only served to Plaintiff Wasmanski, and only Plaintiff Wasmanski allegedly touched the carcass with her fork. While in a general sense, it could be said that the alleged intentional conduct was directed at all people sitting at the table, the potatoes were served to Plaintiff Wasmanski specifically, after she sent back the first plate of mashed potatoes.[6]

Moreover, the degree of outrageousness of the alleged conduct differs as to each Plaintiff.  It is one thing to see a mouse carcass in someone else's food, even when the other person is sitting at the same table.  It is quite another to discover a mouse carcass in one's own food by placing a fork into the food. However, because Defendant's present Motion focuses exclusively

---

[5]   The Court makes no ruling as to the negligence claims that are asserted in the Complaint, as there is no Motion pending addressing those Counts.

[6]   The Court will assume without deciding that Plaintiff Wojenski has stated a valid IIED claim, either under the theory that the intentional act of placing the mouse carcass in the mashed potatoes was directed at both Plaintiffs or under the theory that the intentional act was directed at Plaintiff Wasmanski but Defendant is nevertheless liable to Plaintiff Wojenski as someone who was present at the table when Plaintiff Wasmanski allegedly discovered the mouse carcass.  *Cf.* Restatement (Second) of Torts § 46(2)(a) ("Where [extreme and outrageous conduct] is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm.").

on the legal implications of the undisputed facts that neither Plaintiff has sought medical treatment for their alleged psychological injuries, the Court will discuss that issue without making a distinction between the two Plaintiffs.

**B.**

The elements of an IIED claim under New Jersey law are: (1) "'intentional and outrageous conduct by the defendant'"; (2) "'proximate cause'"; and (3) "'distress that is severe'".  *Taylor v. Metzger*, 152 N.J. 490, 509 (1998)(quoting *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 366 (1988)).[7]  As to the first element, "'[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Buckley*).[8]  Mere "'insults, indignities, threats, annoyances, petty oppressions and other trivialities'" are not actionable.  *Id.*

As to the third element, "the emotional distress suffered by the plaintiff must be 'so severe that no reasonable person would

---

[7] *Buckley* states that an IIED claim may be based on either intentional or reckless conduct, *see Buckley,* 111 N.J. at 366, however, as previously discussed, the claims at issue in this case are based on alleged intentional conduct.

[8] *Taylor* held that a single use of a racial slur was sufficiently outrageous conduct under the circumstances to support an IIED claim.  While the facts of this case are different, *Taylor* supports the conclusion that intentionally placing a mouse carcass in a person's food while they are dining with their family is outrageous conduct.

be expected to endure it.'" *Taylor*, 152 N.J. at 514 (quoting *Buckley*, 111 N.J. at 366). The emotional injury resulting from the extreme and outrageous conduct must be "sufficiently palpable, severe, or enduring." *Id.* "The severity of the emotional distress raises questions of both law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." *Buckley*, 111 N.J. at 367.

The issue is whether the absence of treatment by a professional health care provider is fatal to both Plaintiffs' IIED claims. According to Defendant, New Jersey law requires proof of medical treatment for the alleged emotional distress. The Court disagrees. Certainly, the presence or absence in the record of medical treatment is highly probative in determining the severity of the emotional distress, but the Court does not interpret New Jersey law as requiring proof of medical treatment in all IIED cases. Rather, New Jersey law requires that the psychological injury be "sufficiently palpable, severe, or enduring," *Taylor*, 152 N.J. at 514, and proof of medical treatment tends to prove that the injury was, at the very least, palpable and genuine.[9]

---

[9] Both *Buckley* and the Restatement (Second) of Torts, upon which *Buckley* relies extensively, explain that the legal elements of the tort evolved out of a concern for compensating only "legitimate" claims. *See Buckley*, 111 N.J. at 366 ("By circumscribing the cause of action with an elevated threshold for liability and damages, courts have authorized legitimate claims while eliminating those that should not be compensable.");

*Aly v. Garcia* does not change this Court's conclusion.  333 N.J. Super. 195 (2000), *cert. denied by* 167 N.J. 87 (2001). Defendant correctly quotes *Aly* as follows: "Severe emotional distress refers to any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." 333 N.J. Super. at 204. However, the Court does not interpret this sentence as requiring proof that the IIED plaintiff sought diagnosis or treatment by a health care professional as an independent element of an IIED claim.  As the following two sentences elaborate: "It is not enough to establish that a party is acutely upset by reason of the incident. *In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae.*"  *Aly,* 333 N.J. Super. at 204 (emphasis added).  Thus, the critical question is not whether Plaintiffs sought treatment but rather, did "serious psychological sequelae," result, which (as *Aly's* citation to *Taylor* indicates) is just an alternate articulation of the "palpable, severe, or enduring" emotional distress standard established by New Jersey's Supreme Court.

Whether, as a practical matter, Plaintiffs can prove their alleged "palpable, severe or enduring" psychological injuries

---

*see also* Restatement (Second) of Torts, § 46, cmt. k. ("Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine.").

without the testimony of a health care professional is a different issue.  However, Plaintiffs correctly note that fact and expert discovery is ongoing.[10]  To the extent Defendant's Motion relies on the *lack of proof* of the alleged severity of the emotional distress, it is premature and must be denied for that reason.[11]  The results of any psychological evaluations performed on Plaintiffs will likely produce highly relevant evidence regarding the severity of Plaintiffs' emotional distress.

Based on the foregoing, Defendant's Motion for Summary Judgment will be denied in its entirety.[12]

## IV.

Given the Court's disposition of Defendant's Motion for Summary Judgment, the Motion for Sanctions requires only brief discussion.  Defendant's Rule 11 Motion closely mirrors its unsuccessful summary judgment motion by asserting that the IIED

---

[10]  Magistrate Judge Schneider's Scheduling Order establishes the following deadlines: August 1, 2008, for fact discovery; September 1, 2008, for expert disclosures and reports; October 15, 2008, for dispositive motions. (Docket Entry # 9)

[11]  Defendant argues in its reply papers that this Court somehow implicitly determined that this case was ripe for summary adjudication by granting leave to file the instant motion.  This is certainly not the case. Fed. R. Civ. P. 56(b) makes clear that a motion for summary judgment by a defending party may be sought "at any time."  Similarly, the Court's scheduling order sets the latest date that dispositive motions may be filed, but says nothing about a date *before* which dispositive motions may *not* be filed.  Leave was granted because leave was not required.

[12]  Nothing in this Opinion should be interpreted to preclude Defendant from filing a subsequent Motion for Summary Judgment challenging the legal sufficiency of Plaintiffs' proofs, as to the severity of the alleged emotional distress or any other issue, once discovery has been completed.

claims were legally frivolous because Plaintiffs admittedly never
sought treatment for their psychological injuries, and clearly
unsupported by the evidence because the record does not support a
finding of the requisite severity of distress.

Rule 11 motions "should not be employed to . . . test the
legal sufficiency or efficacy of allegations in the pleadings;
other motions are available for those purposes.  Nor should Rule
11 motions be prepared to emphasize the merits of a party's
position."  Fed. R. Civ. P. 11, Advisory Committee Notes (1993
Amendments).  With respect to Defendant's argument that New
Jersey law requires proof of treatment to state an IIED claim,
Defendant is incorrect, and therefore Rule 11 sanctions are
clearly not warranted.

With respect to Defendant's separate argument about the
sufficiency of the evidence of distress, the Court has concluded
that the Motion is premature, given that discovery is ongoing.
Therefore, sanctions are inappropriate on this ground as well.
"'[T]o say that a party confronts difficult questions of factual
sufficiency is not the same as saying its claims are patently
frivolous.'" *Wartsila NSD North Am., Inc. V. Hill Int'l, Inc.*,
342 F. Supp.2d 267, 274 (D.N.J. 2004) (quoting *Ford Motor Co. v.
Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991)).
The Court holds that the IIED claims "are warranted by existing
law or by a nonfrivolous argument for the extension,

modification, or reversal of existing law" and that Plaintiffs'
"allegations and other factual contentions have evidentiary
support or . . . are likely to have evidentiary support after a
reasonable opportunity for further . . . discovery." Fed. R.
Civ. P. 11(b).

Alternatively, the Court refuses to exercise its discretion
to impose sanctions. *See* Fed. R. Civ. P. 11(c) ("If . . . the
court determines that subdivision (b) has been violated, the
court *may* . . . impose sanctions.")(emphasis added). "Rule 11
sanctions may be awarded in *exceptional circumstances* in order to
discourage plaintiffs from bringing baseless actions or making
frivolous motions." *Bensalem Twp. v. Int'l Surplus Lines Ins.
Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994)(emphasis added). "Since
[Rule 11's] amendment in 1993, the decision whether to issue
sanctions under the rule rests within the court's discretion. As
a result, the 1993 amendments are viewed to discourage imposition
of monetary and other sanctions under the Rule where conduct does
not reach the point of *clear abuse*." *Kuhns v. CoreStates Fin.
Corp.*, 998 F. Supp. 573, 577 (E.D. Pa. 1998) (emphasis added).
There is absolutely nothing before this Court that would even
suggest that Plaintiffs or their counsel have engaged in conduct
that would rise to the level of clear abuse. Accordingly, the
Court declines to exercise its discretion to award sanctions
pursuant to Rule 11.

14

Defendant's Rule 11 Motion will be denied.[13]

## V.

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment and Sanctions in its entirety.  An appropriate order will be issued.

Dated: July 2, 2008

        s/ Joseph E. Irenas
       **Joseph E. Irenas, S.U.S.D.J.**

---

[13]  For all of the above-stated reasons, Defendant's application for attorneys fees and costs pursuant to N.J.S.A. 2A:15-59.1(a)(1) will be denied as well.